(24 Misc. Rep. 109.)

## PHELAN v. EDISON ELECTRIC ILLUMINATING CO. OF BROOKLYN et al.

### (Supreme Court, Special Term, New York County.  June, 1898.)

1. INJUNCTION—CONTRACTS OF CORPORATIONS—PRESUMPTIONS.

Where it is proposed by one corporation to purchase a majority of the stock of another corporation by issuing bonds in payment therefor, secured by mortgage, and a penalty is provided for a failure to perform the conditions of the agreement, the purchasing corporation cannot be enjoined on the ground that the making of the mortgage would be ultra vires because not apparently authorized by a two-thirds vote of the stockholders, as required by law, since it will be presumed that the purchasers intended to execute a valid mortgage when they stipulated a penalty for a failure to complete this part of the agreement.

2. SAME—RIGHTS OF MINORITY STOCKHOLDERS.

To enjoin one corporation from purchasing a majority of the stock of another corporation at the suit of a minority and dissenting stockholder in the corporation whose stock is sought to be purchased, it must be made clearly to appear that the proposed undertaking is clearly subversive of the interests of the minority stockholders, and consistent only with an obvious disregard of their rights.

Action by James J. Phelan against the Edison Electric Illuminating Company and others.  Motion by plaintiff for injunction pendente lite.  Motion denied, and preliminary injunction vacated.

William F. Sheehan and Charles A. Collis, for plaintiff.

Edward M. Shepard, Paul D. Cravath, and Frank Harvey Field, for defendants.

BISCHOFF, J.  The object of the action and of this motion is to restrain the defendant the Edison Company from carrying out a proposed agreement, offered to such stockholders of the Municipal Electric Light Company as desire to participate, whereby the Edison Company agrees to purchase the holdings of such stockholders, if deposited with a designated trustee before a specified date, and to make payment for the stock thus purchased, at an advance of 100 per cent. over par value, either in cash or by delivery of bonds secured by a second mortgage upon the property of the Edison Company.  The avowed desire of the purchasing corporation is to obtain a majority of the stock of the Municipal Company, and the proposed agreement is to be of effect only in the event of the deposit with the trustee of a majority of the holdings  The agreement provides also for the payment of $15,000 by the Edison Company to the subscribing stockholders, should it be unable to perform its part of the undertaking at the date agreed upon.  The plaintiff is a stockholder of the Municipal Company, and seeks to restrain the prospective parties to this proposed agreement from entering into it, upon the ground that the Edison Company, a business rival of the Municipal Company, has no purpose in the whole transaction other than to annihilate the latter's business, when in control of its affairs, and thus to render worthless the stock of which the plaintiff and other minority and dissentient stockholders are possessed.  By the preliminary injunction, as originally framed, the whole transaction was enjoined in the manner prayed for by the complaint; but, by a

subsequent modification of the order, the injunction was restricted to the matter of any direct agreement between the Edison Company and the Municipal Company, leaving the former and the stockholders of the latter at liberty to enter into and carry out any agreement or agreements for the purchase and sale of the stock in question, The proposed agreement, brought into controversy upon this motion, does not purport to be, nor does it involve, any contract to which the Municipal Company is or may be a party; and it is not apparent that the continuance of the injunction could do the defendants much harm; but it may be that the effect of the order, as it now stands, would be to enjoin the Edison Company from making its proposed mortgage, since thus much of the original order appears, perhaps, to have been retained, and, since the plaintiff moves that the original injunction be reinstated, the matter should properly be determined upon its merits.

So far as the injunction proceeds upon the theory that the making of the mortgage by the Edison Company to secure the purchase price of this stock would be ultra vires, because not apparently authorized by a two-thirds vote of the company's own stockholders, the order cannot be sustained. The agreement, as proposed, is not based upon the intended making of any mortgage by the Edison Company which would be invalid, so far as appears; and it is not to be assumed that the company intends to act without observing the requirements of law. Moreover, it is quite clear that the assent of two-thirds of the stockholders to the mortgage is contemplated by the proposed agreement as a fundamental necessity, since the possibility of the Edison Company's inability to complete this part of the agreement is set forth and provided for by the condition with regard to the payment of damages. That the directors of the Edison Company had power to enter into the agreement, in this regard, and that the agreement, so far, was perfectly valid, was held by Mr. Justice Scott, as against an attack by a stockholder of that company, whose position was, indeed, stronger than that of this plaintiff; and I have no hesitation in concurring in the views expressed by him in that case. Leeman v. Illuminating Co., 53 N. Y. Supp. 302.

As to the nature of the agreement generally, there can be no doubt that the Edison Company has legal authority to purchase directly from the stockholders of the Municipal Company any or all of the stock of the latter, if desired (Stock Corporation Law, § 40); and, if it should purchase a majority of that stock, naturally it would have a controlling vote in the matter of the latter corporation's management. Legally, then, the Edison Company is authorized to obtain control of the Municipal Company's business policy, if it is able to acquire the stock; but, according to the plaintiff, equity should intervene upon the ground that, when the purchasing corporation's desire to obtain a majority of this stock is confessed, a sinister motive is disclosed, and that the court is to assume the sole object of the purchase to be the destruction of the purchased company's business. The whole matter, for the purposes of the plaintiff's case, must be said to rest upon assumptions, since the only direct proof

upon the question of intent is found in the allegations, made in behalf of the Edison Company, that the latter's object is to protect and preserve the business and property of the Municipal Company, and to fully utilize the facilities possessed by both companies for furnishing electric light within the territory in question. Upon the matter of probabilities, I cannot find from the facts that it would be to the interests of the Edison Company to wreck the Municipal Company's business rather than to continue it, with the greater profit which might be expected to result from the combination of the respective plants, and the lessening, so far, of active competition. The plaintiff's apprehensions, and the surmises upon which he bases them, cannot afford warrant for the court's interference in such a case as this, where the good faith of the purchasing corporation and of the stockholders, whose stock is offered for sale, is directly alleged, and is not necessarily impugned by the circumstances of the case. The court is not to balance the probabilities to a nicety for the purpose of determining whether the proposed transaction should or should not be approved. The question is whether or not the undertaking must clearly be subversive of the interests of the minority stockholders, and consistent only with an obvious disregard of their rights.

As was said by Peckham, J., in Gamble v. Water Co., 123 N. Y. 91, at page 99, 25 N. E. 201, at page 202:

"Generally, the rule must be that in such cases the will of the majority shall govern. The court would not be justified in interfering even in doubtful cases, where the action of the majority might be susceptible of different constructions. To warrant the interposition of the court in favor of the minority shareholders in a corporation or joint-stock association, as against the contemplated action of the majority, where such action is within the corporate powers, a case must be made out which plainly shows that such action is so far opposed to the true interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests; but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company, and in a manner inconsistent with its interests. Otherwise, the court might be called upon to balance probabilities of profitable results to arise from the carrying out of the one or the other of different plans proposed by or on behalf of different shareholders in a corporation, and to decree the adoption of that line of policy which seemed to it to promise the best results, or at least to enjoin the carrying out of the opposite policy. This is no business for any court to follow."

There is no question that, if the plaintiff's fears were shown to be founded in fact, the injury suffered or threatened should and would be made the basis of equitable intervention. So much is held by the authorities cited in support of this motion, but the rule above quoted has not been departed from, so far as can be found, and its soundness is obvious and irresistible. If the matter eventuates as the plaintiff prophesies, he may well be relieved in season; but upon the present motion the proof of a threatened inequity, as sought to be derived only from the admitted circumstances, is quite insufficient. Motion denied, and preliminary injunction vacated, with $10 costs.

Motion denied, and injunction vacated, with $10 costs.